**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MICHAEL PRUITT, | : | CIVIL ACTION |
|  | : |  |
| Petitioner, | : | No. 2:09-cv-01625-MSG |
|  | : |  |
| v. | : |  |
|  | : | Hon. Mitchell S. Goldberg |
| JOHN E. WETZEL, et al., | : | United States District Judge |
|  | : |  |
| Respondents. | : | THIS IS A CAPITAL CASE |
|  | : |  |

---

**POST-HEARING BRIEF IN SUPPORT OF**
**PETITION FOR A WRIT OF HABEAS CORPUS**

---

LOREN STEWART
ANDREW CHILDERS
Capital Habeas Unit
Federal Community Defender Office
 for the Eastern District of Pennsylvania
The Curtis, Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

Counsel for Petitioner, Michael Pruitt

Dated:  July 1, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.     APPLICATION OF *SHINN V. RAMIREZ*, 142 S. CT. 1718 (2022)..................................... 1

II.    DNA EVIDENCE PRESENTED TO THE STATE COURT AND IN THE FEDERAL
       HEARING. ..................................................................................................................... 4

       A.     DNA Evidence Presented to the State Court ................................................................4

       B.     DNA Evidence Adduced at the Federal Evidentiary Hearing .......................................7

III.   A NEW TRIAL IS WARRANTED ON THE DNA CLAIMS ............................................. 9

       A.     Petition Claim I: Counsel Was Ineffective for Failing to Investigate the
              Commonwealth's DNA Evidence, for Failing to Conduct Effective Cross-
              Examination of the Commonwealth's Expert, and for Failing to Present a
              Defense DNA Expert Who Could Have Excluded Petitioner as the Perpetrator. ........ 9

       B.     Petition Claim II: Mr. Pruitt Was Denied His Right to Due Process and a Fair
              Trial Because the Commonwealth Presented False Evidence and/or Allowed False
              Testimony to Stand Uncorrected When It Elicited Testimony that Mr. Pruitt Was
              a DNA Match to the Perpetrator and Concealed Evidence of Forensic Science
              Errors; Counsel Was Ineffective and Mr. Pruitt Was Prejudiced. ............................ 11

       C.     Petition Claim IV: Mr. Pruitt Was Denied His Right to Due Process at the
              Guilt   Phase as a Result of the Cumulative Effect of the Commonwealth's
              *Brady* and *Napue* Violations. ..................................................................................... 13

       D.     Petition Claim V: Mr. Pruitt Was Denied His Rights to Due Process and
              Reliable Sentencing Because He Was Convicted and Sentenced to Death
              on the Basis of False and Unreliable Scientific Testimony. ...................................... 13

       E.     Relief Is Appropriate on the Remaining Claims......................................................... 14

IV.    THE COURT SHOULD ADJUDICATE THE MERITS OF THE CLAIMS
       PURPORTEDLY WAIVED IN STATE COURT AND GRANT A NEW TRIAL. .......... 14

       A.     The State Court Record Establishes that Mr. Pruitt Did Not Knowingly Waive
              Any Guilt Phase Claims in State Court, and that Mr. Pruitt's Counsel Was
              Ineffective for Failing to Protect His Client's Interests in State Court...................... 14

       B.     Mr. Dautrich's Testimony at the Federal Evidentiary Hearing Confirms that
              Mr. Pruitt Did Not Knowingly Waive Any Guilt Phase Claims in State Court,
              and that   Mr. Pruitt's Counsel Was Ineffective for Failing to Protect His
              Client's Interest in State Court................................................................................... 19

REQUEST FOR RELIEF ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Federal Cases**

*Bey v. Sup't Greene SCI*, 856 F.3d 230 (3d Cir. 2017) ............................................................ 3, 19

*Breakiron v. Horn*, 642 F.3d 126 (3d Cir. 2011) ...................................................... 11

*Buck v. Davis*, 137 S. Ct. 759 (2017) ...................................................... 3, 4

*Buck v. Dretke*, No. H-04-3965, 2006 WL 8411481 (S.D. Tex. July 24, 2006) .......................... 3

*Chadwick v. Janecka*, 312 F.3d 597 (3d Cir. 2002) ...................................................... 12

*Coleman v. Thompson*, 501 U.S. 722 (1991) ...................................................... 1

*Cone v. Bell*, 556 U.S. 449 (2009) ...................................................... 12

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974) ...................................................... 13

*Edwards v. Arizona*, 451 U.S. 477 (1981) ...................................................... 17, 18

*Fahy v. Horn*, 516 F.3d 169 (3d Cir. 2008) ...................................................... 18

*Giglio v. United States*, 405 U.S. 150 (1972) ...................................................... 11-12

*Godinez v. Moran*, 509 U.S. 389 (1993) ...................................................... 17

*Grant v. Lockett*, 709 F.3d 224 (3d Cir. 2013) ...................................................... 11

*Jacobs v. Horn*, 395 F.3d 92 (3d Cir. 2005) ...................................................... 12

*Kyles v. Whitley*, 514 U.S. 419 (1995) ...................................................... 10

*Lambert v. Beard*, 633 F.3d 126 (3d Cir. 2011) ...................................................... 11

*Lambert v. Beard*, 537 F. App'x 78 (3d Cir. 2011) ...................................................... 11

*Lambert v. Blackwell*, 387 F.3d 210 (3d Cir. 2004) ...................................................... 12

*Martinez v. Ryan*, 566 U.S. 1 (2012) ...................................................... 1, 2, 3, 19

*McDaniel v. Brown*, 558 U.S. 120 (2010) ...................................................... 11

*Napue v. Illinois*, 360 U.S. 264 (1959) ...................................................... 1, 11, 12, 13

*Oregon v. Bradshaw*, 462 U.S. 1039 (1983) ...................................................... 17

*Rice v. McGinley*, No. 17-CV-01503-TS, 2021 WL 2582303 (E.D. Pa. Feb. 16, 2021),
    *report and recommendation adopted*, 2021 WL 2577457 (E.D. Pa. June 22, 2021) ............... 3

*Rosencrantz v. Lafler*, 568 F.3d 577 (6th Cir. 2009) ...................................................... 12

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ...................................................... 17

*Shields v. Smith*, No. 18-CV-00750-JD, 2020 WL 6929097 (E.D. Pa. Oct. 5, 2020),
    *report and recommendation adopted*, 2020 WL 6888466 (E.D. Pa. Nov. 24, 2020) .......... 3-4

*Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) ...................................................... 1, 2, 19

*Showers v. Beard*, 635 F.3d 625 (3d Cir. 2011) ...................................................... 11

*Strickland v. Washington*, 466 U.S. 668 (1984) ...................................................... *passim*

*Townsend v. Burke*, 334 U.S. 736 (1948) ...................................................... 13

*Trevino v. Thaler*, 569 U.S. 413 (2013) ...................................................... 2, 3

*United States v. Agurs*, 427 U.S. 97 (1976) ............................................................ 12

*Wetzel v. Lambert*, 565 U.S. 520 (2012) ................................................................ 11

*White v. Illinois*, 502 U.S. 346 (1992) .................................................................. 13

*Wyrick v. Fields*, 459 U.S. 42 (1982) .................................................................... 17

**Federal Statutes**

28 U.S.C. § 2254 ................................................................................. 1, 2, 12, 18

**State Case**

*Commonwealth v. Pruitt*, 162 A.3d 394 (Pa. 2017) .......................................... 10, 17, 18

**Other**

Brief for the States of Texas et al., as Amici Curiae in Support of Petitioners,

    *Shinn v. Ramirez*, No. 20-1009, 2021 WL 3172094 ..................................................4

## INTRODUCTION

The facts offered in state court—and clarified in a short hearing before this Court— establish that the Commonwealth presented false DNA evidence at Mr. Pruitt's capital trial. They establish that his trial counsel did not even try to understand the DNA evidence, ineffectively failed to highlight the false testimony by the State's expert, and ineffectively failed to offer testimony that Mr. Pruitt should have been excluded as a possible contributor to the DNA sample. For its part, the Commonwealth has not offered an expert in state or federal court to counter the above conclusions. The jury was given the impression that the DNA evidence was ironclad evidence of guilt when, in fact, it suggested Mr. Pruitt's innocence. This is a case where the materiality standards under *Strickland v. Washington*, 466 U.S. 668 (1984), and *Napue v. Illinois*, 360 U.S. 264 (1959), are met and a new trial should be ordered.

The Supreme Court's recent decision in *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), does not change that analysis. And the limitations on disturbing state court judgments in 28 U.S.C. § 2254(d) likewise do not prevent the granting of relief here. The state court unreasonably applied *Strickland* to Mr. Pruitt's ineffectiveness of trial counsel claim and did not identify and apply the correct legal standard to his *Napue* claim. The facts of this case, and Supreme Court precedent, lead inexorably to the conclusion that the writ should be granted.

## ARGUMENT

### I.   APPLICATION OF *SHINN V. RAMIREZ*, 142 S. CT. 1718 (2022).

Mr. Pruitt previously acknowledged that several claims in his petition are procedurally defaulted but sought to overcome the defaults pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Coleman v. Thompson*, 501 U.S. 722 (1991). *See* (Docs. 142, 160). He offered detailed arguments in each claim as to why merits adjudication was warranted. *Id.*

1

The United States Supreme Court recently issued its opinion in *Shinn v. Ramirez*, 142 S. Ct. 1718. In *Ramirez*, the Court held that under § 2254(e)(2), a federal court may not consider evidence beyond the state court record based solely on ineffective assistance of post-conviction counsel. *Id*. at 1734. Nothing in *Ramirez* purports to overrule *Martinez*. Indeed, *Ramirez* cites with approval the holding of *Martinez* that, in appropriate circumstances, petitioners may overcome procedural default by establishing that they received ineffective assistance of post-conviction counsel. *See Ramirez*, 142 S. Ct. at 1733 (citing *Martinez*).

*Ramirez* thus limits but does not overrule *Martinez*. It limits the consideration of evidence outside the state court record, where a petitioner "has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). In that circumstance, federal courts cannot expand the record. It does not prohibit federal courts from granting relief based on the state court record.[1] *See Ramirez*, 142 S. Ct. at 1734.

The setting aside of the procedural defaults in this case is amply supported by the state court record. Whether or not the Court considers the testimony from the federal hearing held on April 20, 2022, the result is the same. All of the facts alleged in the Memorandum of Law and in the Reply (which were filed before the federal hearing) are supported by documents in Mr. Pruitt's appendices that were presented to the state court. The documents in Mr. Pruitt's reply appendix (Doc. 160-1) are particularly informative. The issues here thus stand in the same position as the ineffectiveness claims that the Supreme Court found cognizable in *Martinez* and *Trevino*. *See Martinez*, 566 U.S. at 6-7, 18; *Trevino v. Thaler*, 569 U.S. 413, 418-20, 429 (2013). *Ramirez* does not prevent this Court from reaching the defaulted claims on the merits.

---

[1] In light of the holding in *Ramirez*, Mr. Pruitt does not offer further argument that the Court should permit Dr. William Shields to testify. *See* NT Federal Hrg. at 76-77.

Several of the defaulted claims are based primarily on the trial record. With regard to record-based claims like these, the Supreme Court has found cause to forgive procedural default based on postconviction counsel's ineffectiveness without the need for an evidentiary hearing or extra-record evidence. *See, e.g.*, *Buck v. Davis*, 137 S. Ct. 759, 780 (2017). The petitioner in *Buck*, relying on *Martinez* and *Trevino*, sought to excuse a procedural default based on his first state post-conviction counsel's ineffective failure to raise a claim that his trial attorney ineffectively relied on an expert who testified to racial stereotypes. *Id*. at 767. The *Buck* Court found, based on the state court record alone, that the petitioner had demonstrated ineffective assistance of trial counsel, and therefore that state postconviction counsel's failure to raise the claim was also ineffective. *Id*. at 779-80; *see also Buck v. Dretke*, No. H-04-3965, 2006 WL 8411481, at *7-8, 11 (S.D. Tex. July 24, 2006).

Courts routinely apply *Martinez* to excuse procedural default and grant relief on underlying ineffective assistance of trial counsel claims without an evidentiary hearing or consideration of extra-record evidence. *See, e.g.*, *Bey v. Sup't Greene SCI*, 856 F.3d 230, 239-44 (3d Cir. 2017) (prior counsel ineffective for failure to object to erroneous *Kloiber* jury charge); *Rice v. McGinley*, No. 17-CV-01503-TS, 2021 WL 2582303, at *8-9 (E.D. Pa. Feb. 16, 2021) (failure to object to erroneous specific-intent-to-kill jury charge), *report and recommendation adopted*, 2021 WL 2577457 (E.D. Pa. June 22, 2021); *Shields v. Smith*, No. 18-CV-00750-JD, 2020 WL 6929097, at *10-20 (E.D. Pa. Oct. 5, 2020) (failure to object to erroneous reasonable doubt jury charge), *report and recommendation adopted*, 2020 WL 6888466 (E.D. Pa. Nov. 24,

2020).[2] As in *Buck* and the cases cited above, there is no need for extra-record evidence to decide the defaulted claims.

## II.    DNA EVIDENCE PRESENTED TO THE STATE COURT AND IN THE FEDERAL HEARING.

### A.    DNA Evidence Presented to the State Court

Mr. Pruitt presented extensive evidence to the state court regarding the DNA, the false trial testimony, his trial counsel's ineffectiveness, and how he was prejudiced. In summary,[3] the Commonwealth presented evidence at trial that Mr. Pruitt's DNA profile "matched" the DNA contained in sperm cells found on a swab taken from the victim's left inner thigh. Lisa Mihalacki, a forensic scientist with the DNA Laboratory of the Pennsylvania State Police Forensic Laboratory, testified at trial that "the sperm fraction[,] which was what we tried to separate and only the sperm DNA cells, . . . matched Michael Pruitt." NT Guilt Phase at 313. Ms. Mihalacki further explained that a "match" meant that "[e]very genetic marker, every place that we checked from this sample and Michael Pruitt's were identical to each other." *Id.*

This was false, the testimony was perjured. As is clear from the face of the report itself, the alleles derived from Mr. Pruitt's reference sample were *different* at the FGA locus and the Amelogenin, and the forensic sample yielded *no result* at three loci (D16, D7, and D5). *See* (Doc. 109 at 10 (lab report)).[4]

---

[2] In an amicus brief filed in *Ramirez*, Texas and other states argued that *Martinez* should remain available at least for "record-based ineffective-assistance claims." Brief for the States of Texas et al., as Amici Curiae in Support of Petitioners, *Shinn v. Ramirez*, No. 20-1009, 2021 WL 3172094, at *19.

[3] Mr. Pruitt incorporates by reference the factual allegations and legal arguments contained in his Petition (Doc. 94), Memorandum of Law (Doc. 142), and Reply (Doc. 160).

[4] Pin cites to documents that have been filed in this Court are to the page numbers contained in the CM/ECF-generated header.

Trial counsel could have challenged Ms. Mihalacki's false testimony simply by bringing out the inconsistency in her own reports. But counsel did not. Instead, trial counsel spent half of their cross-examination eliciting basic explanations of information found in the reports. NT Guilt Phase at 316-20. The other half reflected trial counsel's misguided focus on the calculation of the probabilities that another person would have the same DNA profile as Mr. Pruitt—an irrelevant calculation given that Mr. Pruitt's profile did not match the DNA profile of the sperm cells. *Id.* at 320-23, 326-29. The Commonwealth capitalized on the false testimony about a DNA "match" in its closing argument. *See, e.g.*, NT Guilt Phase at 669 (arguing Mr. Pruitt's guilt based on "overwhelming physical evidence, overwhelming medical evidence, overwhelming scientific evidence, the DNA in this case").

Trial counsel, Michael Cammarano and David Maynard, did not even try to understand the DNA evidence. As they explained in state postconviction proceedings, neither Mr. Cammarano nor Mr. Maynard prepared to cross-examine Ms. Mihalacki. NT PCRA Hrg. at 324, 1203. Mr. Cammarano testified that he did not understand the numbers or data in the Commonwealth's DNA Analysis reports and relied on the conclusions in the report to understand it. *Id.* at 1208. Despite recognizing that the DNA evidence as (falsely) presented was "overwhelming" and "damaging," (Doc. 109 at 72 (Cammarano Dec.)), trial counsel did not retain a forensic expert to evaluate it or assist their understanding. NT PCRA Hrg. at 1200.

In the state court PCRA evidentiary hearing, Mr. Pruitt presented molecular biologist Dr. Randell Thomas Libby to offer his expert opinion on the forensic evidence.[5] Dr. Libby testified that, if the DNA Analysis reports are taken at face value, they *exclude* Mr. Pruitt as a possible

---

[5] Dr. Libby's testimony from the state court hearing was admitted as Exhibit K in the federal hearing. NT Federal Hrg. at 11.

contributor to the male DNA on the left thigh swab. *Id.* at 55-58, 62-65, 121. At the FGA locus, Mr. Pruitt's profile is a 22, 23. *Id.* at 57. The sperm fraction was a 22, 22. Dr. Libby testified that, "if it is only 22 based on what we are looking at here, it would exclude." *Id.* at 121.

Dr. Libby also explained in the state court hearing why Ms. Mihalacki's explanations at trial—sample contamination, allelic dropout, or other phenomena—would not adequately explain the absence of Mr. Pruitt's 23 allele at the FGA locus. If Ms. Mihalacki explained the absence of the 23 allele by allelic dropout, she would also be required to consider dropout at other loci. *Id.* at 64. If she had assumed allelic dropout at, for example, the D18 locus where Mr. Pruitt is a homozygous 16, then he would have been excluded based on that locus as well. *See id.* at 55-64. Dr. Libby opined that there was no scientific reason, nor anything in the underlying data, to support Ms. Mihalacki's explanation for the sample being inconsistent with Mr. Pruitt at the FGA locus. *Id.* at 64.

In addition to the five loci that do not "match" on the face of the report, Dr. Libby testified that seven other loci were improperly called a "match." He explained that "there's oftentimes spillover of fractions" in a mixed sample that has been subjected to differential extraction (to separate the "male" and "female" fraction in a mixed DNA sample). *Id.* at 69. That is, the forensic sample that is ostensibly separated to yield a "male" and "female" fraction may have female DNA in the male sample and vice versa. *Id.* ("So it would not be unusual to find a [female] victim's profile in the Q1M [male] fraction."); *see also id.* at 41, 49-50.

That is particularly relevant here, where the victim and Mr. Pruitt shared alleles at several loci. *See* (Doc. 109 at 10 (DNA profiles of reference samples K1 (victim) and K2 (Mr. Pruitt), reflecting at least one common allele at the following loci: D13, D5, CSF, TPOX, D18, D21, D3, FGA, D8, and Amelogenin)). Dr. Libby opined that, at seven loci in the forensic sample, the

alleles that supposedly "matched" Mr. Pruitt may have originated from Ms. Gougler. *See* NT PCRA Hrg. at 69-70 (marking the following loci as common between Mr. Pruitt, Ms. Gougler, and the Q1M sample: D13, CSF, TPOX, D18, D21, D3, D8). Dr. Libby opined that there is no way to determine if the alleles in the Q1M fraction at those loci came from Mr. Pruitt, Ms. Gougler, or someone else. *Id.* at 70. Dr. Libby thus opined that, "if we redact out what the common alleles are and what Ms. Gougler could have contributed, the unique sites, . . . unique loci, is now down to *three sites*: that being TH01, VWA, and Penta E." *Id.* at 72 (emphasis added). That is a far cry from the fifteen-site match that the Commonwealth offered at trial.

Each of the above allegations were alleged and proven in the state court hearing. The Commonwealth has never meaningfully disputed the factual allegations set forth above. The Commonwealth has never—in state or federal court—presented an expert to counter Dr. Libby's analysis and conclusions.

### B.    DNA Evidence Adduced at the Federal Evidentiary Hearing

The Court should grant relief and order a new trial based solely on the evidence offered at the state court hearing. However, if the Court, as it should, considers the testimony that Dr. Libby offered at the federal evidentiary hearing, the same result obtains. In the federal hearing, Dr. Libby confirmed the same conclusions he had offered in state court, with additional clarifications. He confirmed that Lisa Mihalacki's testimony of a "match[] . . . at every place that we checked," was false. NT Federal Hrg. at 20; *see id.* at 27 (testifying that "amelogenin . . . does not match," that "FGA" is "not a match," and that "no data [was] obtained . . . at the D16[] locus, the D7[] locus and the D5[] locus. So those are three more sites where we can't say that they match."). He confirmed that there was a problem with "overlapping alleles . . . at the D13, the CSF, TPOX, D18, D21, D3, and D8." *Id.* at 32. He found the absence of Mr. Pruitt's 23 allele at the FGA locus "compelling" and, on cross examination, confirmed that Mr. Pruitt should have

been excluded as a possible contributor to the forensic sample. *Id.* at 44 ("Q. [I]s there anything in that [chart] that absolutely excludes Mr. Pruitt as a contributor to the sample? A. Well, the FGA locus we talked about -- Q. Okay. A. --and the Amelogenin locus. Yes."); *see also id.* at 77 (the Court remarking, "I heard that Dr. Libby in his clarification said that Mr. Pruitt should have been excluded as a possible perpetrator.").

The Commonwealth suggested on cross examination that Dr. Libby's federal testimony was different than his state-court testimony. *See id.* at 44-45. Specifically, it suggested that Dr. Libby did not testify in state court that Mr. Pruitt should be excluded at the FGA locus. *Id.* at 45 ("Q. Your answer [in the state court hearing was]: 'I see what you're saying. No, I'm not saying you can exclude. I'm saying it's inconclusive.' That was your testimony.") (quoting NT PCRA Hrg. at 121). But the Commonwealth's question was misleading because it omitted the very next sentence of Dr. Libby's state court testimony in which he testified, "If it is -- if it is only 22 based on what we are looking at here [the FGA locus], *it would exclude.*" NT PCRA Hrg. at 121 (emphasis added). Counsel for Mr. Pruitt made this point on redirect examination. NT Federal Hrg. at 47-48. The Commonwealth's attempt to discredit Dr. Libby fails. And, again, the Commonwealth offered no expert testimony of its own to contradict Dr. Libby's opinion.

Before the federal hearing, the Commonwealth contended: (1) that Lisa Mihalacki's trial testimony was not false because she also "explain[ed] that the DNA found at the scene was consistent with the sample taken from Pruitt," (Doc. 151 at 17); and (2) that Dr. Libby "backed off on his statement of exclusion and instead referred to the evidence as inconclusive," *id.* Even before the federal hearing, Mr. Pruitt laid out in detail that the Commonwealth's arguments were factually and legal wrong. *See* (Doc. 160 at 21-25). Dr. Libby's testimony in the federal hearing

further rebuts each of the Commonwealth's contentions. As set forth in the next section, the

Court should grant a new trial on the DNA claims.

III.    **A NEW TRIAL IS WARRANTED ON THE DNA CLAIMS**

      A.    <u>Petition Claim I:</u> **Counsel Was Ineffective for Failing to Investigate the Commonwealth's DNA Evidence, for Failing to Conduct Effective Cross-Examination of the Commonwealth's Expert, and for Failing to Present a Defense DNA Expert Who Could Have Excluded Petitioner as the Perpetrator.**

        Mr. Pruitt set forth in detail in his Memorandum of Law and Reply that his trial counsel

was ineffective within the meaning of *Strickland*, 466 U.S. 668. *See* (Doc. 142 at 35-41

(Memorandum of Law)); (Doc. 160 at 28-35 (Reply)). As to the deficient performance prong, the

Commonwealth conceded in its Response that trial counsel performed deficiently. (Doc. 151 at

21 ("[A]s was discussed by both the PCRA Court and the Pennsylvania Supreme Court, . . . trial

counsel should have done a better job with the DNA evidence")).

        The Commonwealth contends that Mr. Pruitt was not prejudiced by his counsel's

deficient performance because, according to the Commonwealth, the forensic DNA sample was

"consistent with" Mr. Pruitt. (Doc. 151 at 17). The Commonwealth is mistaken. As set forth

above, evidence in the state court record (that was reiterated in the federal hearing) makes clear

that Mr. Pruitt should have been *excluded* as a possible contributor to the forensic DNA sample

based on, *inter alia*, inconsistencies at the FGA locus and the Amelogenin. *See supra*.

        The jury was told that Mr. Pruitt's reference sample matched the forensic DNA sample at

every locus—all fifteen of them. This was false. The prosecutor emphasized the importance and

reliability of the scientific evidence in his closing argument; that argument was false and the

science was faulty. The jury did *not* hear that Mr. Pruitt should be excluded as a possible

contributor to the forensic DNA sample because he actually had different alleles at two loci. The

jury did not hear that the sample was badly handled and poorly processed—that it failed to

produce *any* result at an additional three loci. No one told the jury that, because of overlapping alleles and spillover, seven additional loci should be discounted. That left only three possibly-probative loci. But instead, the jury was falsely told that Mr. Pruitt matched the sample "at every place that we checked."

Constitutionally effective trial counsel could have obliterated the Commonwealth's forensic expert, highlighting that she was offering perjured testimony. But trial counsel utterly failed to understand, investigate, cross-examine, and present their own DNA expert to defend Mr. Pruitt. That was ineffective under *Strickland*. 466 U.S. at 690-91 ("Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). A professionally reasonable attorney could have undermined completely the supposedly "overwhelming" DNA evidence and could have also cast doubt on the integrity of the Commonwealth's entire investigation. *See Kyles v. Whitley*, 514 U.S. 419, 445 (1995) (noting that exculpatory evidence "would have raised opportunities to attack not only the probative value of crucial physical evidence and the circumstances in which it was found, but the thoroughness and even the good faith of the investigation"). Trial counsel did none of that.

The state court determination resulted in a decision that was an unreasonable application of *Strickland*. Mr. Pruitt set forth in detail in his Memorandum of Law that the state court's no-prejudice finding unreasonably: (1) failed to account for the impact of a DNA exclusion; (2) ignored the possibility that the non-matching DNA profile suggested the presence of another perpetrator; (3) shifted the burden to Mr. Pruitt to "persuasively suggest any other person's involvement" in the crime, *Commonwealth v. Pruitt*, 162 A.3d 394, 401 (Pa. 2017); (4) concluded that Mr. Pruitt's highly suspect and unreliable statements outweighed the DNA

exclusion; and (5) failed to consider that effective counsel would have impeached both the DNA evidence and the Commonwealth's entire investigation. (Doc. 142 at 42-45). This Court should find Mr. Pruitt's trial-counsel-ineffectiveness claim meritorious, even applying double deference, and grant a new trial, as the Third Circuit has done in similar cases. *See, e.g.*, *Grant v. Lockett*, 709 F.3d 224, 232, 238 (3d Cir. 2013); *Breakiron v. Horn*, 642 F.3d 126, 145 (3d Cir. 2011); *Showers v. Beard*, 635 F.3d 625, 634 (3d Cir. 2011) (holding defense counsel ineffective for failing to present expert testimony to rebut the prosecution's theory, that petitioner was prejudiced, and that the state court decision rejecting petitioner's claim was "contrary to and an unreasonable application of clearly established federal law"); *accord Lambert v. Beard*, 633 F.3d 126, 133 (3d Cir. 2011) *cert. granted, judgment vacated on other grounds sub nom. Wetzel v. Lambert*, 565 U.S. 520, 526 (2012), *on remand*, 537 F. App'x 78 (3d Cir. 2013).

The Supreme Court has cautioned, "[w]e have stated before that DNA testing can provide powerful new evidence unlike anything known before. Given the persuasiveness of such evidence in the eyes of the jury, it is important that it be presented in a fair and reliable manner." *McDaniel v. Brown*, 558 U.S. 120, 136 (2010) (internal quotation and citation omitted). The DNA here was not presented fairly or reliably. The state court determination involved an unreasonable application of *Strickland*. Mr. Pruitt respectfully requests that the Court grant relief and order a new trial on Claim I.

      **B.**      <u>**Petition Claim II:**</u> **Mr. Pruitt Was Denied His Right to Due Process and a Fair Trial Because the Commonwealth Presented False Evidence and/or Allowed False Testimony to Stand Uncorrected When It Elicited Testimony that Mr. Pruitt Was a DNA Match to the Perpetrator and Concealed Evidence of Forensic Science Errors; Counsel Was Ineffective and Mr. Pruitt Was Prejudiced.**

In Claim II, Mr. Pruitt alleged that the Commonwealth presented false evidence and/or allowed false testimony to stand uncorrected in violation of *Napue*, 360 U.S. 264, and *Giglio v.*

11

*United States*, 405 U.S. 150 (1972). Mr. Pruitt alleged that Lisa Mihalacki offered perjured testimony. *See United States v. Agurs*, 427 U.S. 97, 103 (1976); *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004). The factual predicate for this claim is outlined above and will not be repeated. It is inescapable that the Commonwealth presented false evidence when its DNA expert testified that Mr. Pruitt's reference sample matched the forensic sample.

Mr. Pruitt emphasizes two additional matters. First, "[a] new trial is required if the 'false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .'" *Giglio*, 405 U.S. at 154 (quoting *Napue*, 360 U.S. at 271). That materiality standard is even lower than the "reasonable probability" standard under *Strickland*. *See Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009). Where, as here, the Commonwealth presented a false DNA match and emphasized it in its closing argument, the *Napue* materiality standard is met.

Second, for the Court's 2254(d) analysis, the state court did not identify and apply the correct legal standard under *Napue* and *Giglio*. Mr. Pruitt addressed this in his memorandum of law. *See* (Doc. 142 at 65-67). Because the state court did not identify and apply the correct legal standard, this Court's review of the claim is de novo. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005); *Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) ("[I]f an examination of the opinions of the state courts shows that they misunderstood the nature of a properly exhausted claim and thus failed to adjudicate that claim on the merits, the deferential standards of review in AEDPA do not apply."). Applying a de novo review of this claim, relief is warranted.

The Supreme Court has been clear: "a conviction obtained through the use of false evidence . . . must fall under the Fourteenth Amendment." *Napue*, 360 U.S. at 269 (internal citations omitted). The *Napue* violation here is glaring. The state court's adjudication of it was

12

contrary to clearly established federal law; even assuming, *arguendo*, that it identified the correct legal standard, it applied the standard unreasonably. Mr. Pruitt meets the materiality standard for *Napue* violations and should be granted a new trial. That outcome makes sense where the Commonwealth falsely told the jury that Mr. Pruitt's DNA was a match when it was not. Mr. Pruitt respectfully requests that the Court grant relief and order a new trial on this claim.

      **C.**    **<u>Petition Claim IV</u>: Mr. Pruitt Was Denied His Right to Due Process at the Guilt Phase as a Result of the Cumulative Effect of the Commonwealth's *Brady* and *Napue* Violations.**

The evidence from the state court hearing (and the federal hearing, if the Court considers it) exposes the falsity of the Commonwealth's DNA evidence presentation at Mr. Pruitt's capital trial. The cumulative effect of the *Brady* and *Napue* violations here offends due process. For the reasons set forth in his prior pleadings and in the factual recitations set forth above, Mr. Pruitt respectfully requests that the Court grant relief and order a new trial.

      **D.**    **<u>Petition Claim V</u>: Mr. Pruitt Was Denied His Rights to Due Process and Reliable Sentencing Because He Was Convicted and Sentenced to Death on the Basis of False and Unreliable Scientific Testimony.**

In Claim V, Mr. Pruitt argued that his convictions and sentences should be reversed because he was convicted and sentenced to death on the basis of unreliable scientific testimony. *White v. Illinois*, 502 U.S. 346, 363-64 (1992) ("Reliability is . . . a due process concern."); *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974). Similarly, a sentence based upon a material mistake of fact violates due process. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). It was proven in the state court hearing (and reinforced in the federal hearing) that the Commonwealth presented false scientific testimony and evidence. The Due Process Clause does not allow a conviction based on false evidence to stand. Based on the factual allegations and legal arguments raised in the prior pleadings and on the evidence presented in the evidentiary hearings, Mr. Pruitt requests that the Court grant relief and order a new trial.

13

E.      **Relief Is Appropriate on the Remaining Claims**

Mr. Pruitt does not address every claim in this post-hearing brief. But each claim in his

Petition, Memorandum of Law, and Reply is meritorious. He respectfully asks that the Court

grant relief on each claim he has raised for the reasons set forth in his prior pleadings.

IV.    **THE COURT SHOULD ADJUDICATE THE MERITS OF THE CLAIMS**
       **PURPORTEDLY WAIVED IN STATE COURT AND GRANT A NEW TRIAL.**

       A.      **The State Court Record Establishes that Mr. Pruitt Did Not Knowingly**
               **Waive Any Guilt Phase Claims in State Court, and that Mr. Pruitt's Counsel**
               **Was Ineffective for Failing to Protect His Client's Interests in State Court.**

As detailed in Mr. Pruitt's Reply (Doc. 160 at 10-21), the state court record establishes

that Mr. Pruitt did not knowingly waive any guilt phase claims in state court. The

Commonwealth alleges that Mr. Pruitt knowingly, intelligently, and voluntarily waived all guilt

phase claims not related to DNA at a state court hearing on November 23, 2015. But the state

court record reveals the opposite. At the beginning of the November 23, 2015 hearing, Mr.

Pruitt's PCRA lawyer Michael Dautrich indicated that Mr. Pruitt and he had discussed and

agreed to file a revised memorandum of law that Mr. Dautrich had prepared and filed that day.

NT 11/23/2015 at 3. Mr. Pruitt confirmed, when asked by the trial court, that he "read this

motion and memorandum," "had an opportunity to discuss these matters with Mr. Dautrich," and

was "satisfied that he should continue to represent [him]." *Id.* at 4. He also confirmed, when

asked by the trial court, that "this new filing . . . does say that you expressly withdraw any

*penalty phase* issues and arguments raised by prior counsel." *Id.* (emphasis added).

The trial court then asked Mr. Pruitt and Mr. Dautrich about what issues they were

abandoning, and although Mr. Pruitt responded affirmatively when the trial court asked him if

the "various aspects of the DNA evidence" was "the only issue you want us to address," NT

11/23/15 at 5, Mr. Dautrich clarified immediately afterward:

14

> We discussed abandoning the issues that he does not want raised at this time, and
> he understands – and I believe he's making a knowing, conscious decision to
> abandon those issues that are not contained in the pages of that brief.

*Id.* Attorney Dautrich's November 23, 2015 Memorandum of Law raised three issues related to

the DNA evidence in this case, but also noted that "Each of the claims as set forth in the

Amended [PCRA] Petition . . . filed March 19, 2010 as set forth above, and each of the

arguments set forth in this Memorandum, individually entitles Mr. Pruitt to relief in the form of a

new trial." (Doc. 151-7 at 107 (Memorandum (Nov. 23, 2015)).

    Attached to the memorandum was a Motion for Summary Judgment prepared by Mr.

Pruitt that is most relevant to his intent. *See* (Doc. 151-7 at 110-120 (Petitioner's Motion for

Summary Judgment Relief )). This pro se summary judgment motion makes it clear that Mr.

Pruitt was seeking an immediate ruling on the DNA claims, without intending to waive any other

guilt phase claims. In this motion, Mr. Pruitt stated, "although Petitioner is entitled to relief on a

number of grounds he moves for relief on (1) one principle ground at this juncture," that "the

Commonwealth suppressed DNA evidence/information that could have and would have

Exonerated Petitioner . . ." (Doc. 151-7 at 111-12). After detailing his arguments related to this

claim, Mr. Pruitt stated:

> This claim by no means exhaust[s] the broad range of meritorious claims in
> Petitioner's case. Petitioner has raised numerous other claims, as to which he is
> entitled to relief and discovery; But it is on the weight, strength, and power that the
> result of the DNA test that he moves this Petition through this Honorable Court
> begging this Court to exercise it's power and authority to seek justice in the form
> of Summary Judgment Relief in the interest of judicial economy, efficiency, and
> righting a wrongful conviction and a miscarriage of justice.

(Doc. 151-7 at 113).

    Once Mr. Pruitt obtained a copy of the November 23, 2015 transcript and understood that

it appeared from the transcript that certain claims were waived, he wrote to his attorney and the

trial court to clarify that he did not intend to abandon any guilt phase claims. In a docketed letter

to the court, he stated, "I am writing to you cause I have a serious problem with the way the

transcripts from the November 23rd 2015 read." *See* (Doc. 160-1 at 4) (Letter in Application

(Jan. 13, 2016)). Mr. Pruitt stated, "I did not abandon all issues that were not raise[d] in prior

brief[s]." *Id.* Mr. Pruitt then explained that his understanding of the November proceedings was

that he agreed to withdraw all penalty issues, and then asked the trial judge to rule on only his

DNA claims at that time. *Id.* He did not intend to abandon all other guilt phase issues. *Id.*

After his attorney had still done nothing, Mr. Pruitt again attempted to correct his

unknowing waiver, filing a pro se Motion to Correct Record on May 3, 2016. *See* (Doc. 160-1 at

8-14) (May 3, 2016). In that motion, Mr. Pruitt again explained what his intentions had been at

the November 23, 2015 hearing:

> The Petitioner sought Summary Judgment on one of his guilt phase issues, clearly
> stating that he did NOT wish to waive his remaining issues; but felt that he could
> get Summary Judgement Relief on the strength and power of this one issue in itself.
> This was clearly stated at the November 23rd, 2015 hearing before your Honor.

Reply App. at 9 (Doc. 160-1 at 11).

The PCRA court ignored Mr. Pruitt's letter and his motion and denied the petition on

May 25, 2016. (Doc. 160-1 at 15).

While Mr. Pruitt was notifying his attorney and the PCRA court that he did not intend to

waive any guilt phase claims, Attorney Dautrich did nothing until July 22, 2016. That was eight

months after the waiver hearing and only after the court had Mr. Pruitt's PCRA petition.

Attorney Dautrich filed a statement to correct the record on July 22, 2016, stating that Mr. Pruitt

"made a knowing, intelligent, and voluntary waiver of any and all penalty phase issues only. All

other issues were preserved as set forth in prior filings in this case." *See* (Doc. 160-1 at 24-25)

(Defendant's Nunc Pro Tunc Statement to Correct the Record (July 22, 2016)). He stated that

16

Mr. Pruitt "does not intend to waive guilt phase issues in this case or pretrial issues in this case." *Id.*

On July 27, 2016, the trial court filed a Memorandum stating in its entirety, "Upon consideration of Defendant's Nunc Pro Tunc Statement to Correct the Record, [t]he Court deems no action necessary in that the record of the November 23, 2015 colloquy speaks for itself." *See* (Doc. 160-1 at 33) (July 26, 2016).

These facts from the state court record establish that Mr. Pruitt did not knowingly, intelligently, and voluntarily waive any guilt phase issues in state court, and that Mr. Pruitt's PCRA counsel was ineffective in protecting his client's interest. Both the invalid waiver and PCRA counsel's ineffectiveness provide independent bases to excuse the procedural default of those guilt phase claims. *See* (Doc. 160 at 10-21)

The state court decision does not foreclose this Court's review because it was an unreasonable application of clearly established federal law. To waive a substantial right, the waiver must be made knowingly, intelligently, and voluntarily. *See Godinez v. Moran*, 509 U.S. 389, 400-01 (1993); *Edwards v. Arizona*, 451 U.S. 477, 481 (1981); *Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973). When considering the voluntariness of a waiver of a right, courts consider the "totality of the circumstances." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983); *Wyrick v. Fields*, 459 U.S. 42, 46 (1982).

The record at the November 23, 2015, colloquy was itself unclear. *Cf. Pruitt*, 162 A.3d at 406 (noting that the colloquy started one way and then "took a different turn"). But the colloquy is not the only consideration. What the PCRA court came to know *after* the November 23, 2015, hearing and before it ruled on May 25, 2016—the "totality of the circumstances," *Bradshaw*, 462 U.S. at 1045—makes clear that any waiver of the guilt phase claims was not made knowingly,

17

intelligently, and voluntarily. Mr. Pruitt's pro se filings state plainly that he did not intend to waive any guilt phase claim. He misunderstood what happened at the hearing; he did not act "knowingly."

The PCRA court ignored Mr. Pruitt's attempts—and Attorney Dautrich's belated filing—to clarify the record and refused to change course. The Pennsylvania Supreme Court affirmed the PCRA court's waiver without addressing Mr. Pruitt's subsequent pro se filings. Instead, it found that "at the time of the relevant proceedings before the PCRA court, counsel apparently applied his professional judgment in accommodating his client's wishes on the subject of abandonment." *Pruitt*, 162 A.3d at 406. That determination is unreasonable in light of the evidence in the state court record.

A second reason to set aside the procedural default is that the state court did not take into account the totality of the circumstances when assessing Mr. Pruitt's waiver, as required by *Edwards*, 451 U.S. at 481. *See also Fahy v. Horn*, 516 F.3d 169, 194 (3d Cir. 2008). The state court determination was also based on an unreasonable determination of fact in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2).

The ineffectiveness of PCRA counsel also excuses the default of the waiver-related claims. From November 2015 through the July 2016, Attorney Dautrich did nothing. Reasonable counsel would have consulted with Mr. Pruitt, filed a motion, and requested a hearing to safeguard his client's interest and correct the record.

The state court record does not support the Pennsylvania Supreme Court's conclusion that "counsel apparently applied his professional judgment in accommodating his client's wishes on the subject of abandonment." 162 A.3d at 406. Attorney Dautrich was ineffective. PCRA counsel's ineffective failure to raise any guilt phase claims beyond those related to the DNA

18

evidence excuses the procedural default of these other guilt phase claims. *See Martinez*, 566 U.S. at 9 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."); *see also Bey*, 856 F.3d at 237-38.

> **B.     Mr. Dautrich's Testimony at the Federal Evidentiary Hearing Confirms that Mr. Pruitt Did Not Knowingly Waive Any Guilt Phase Claims in State Court, and that Mr. Pruitt's Counsel Was Ineffective for Failing to Protect His Client's Interest in State Court.**

If this Court determines, as it should, that it can consider the testimony of PCRA counsel Dautrich, *see supra* Section I (discussing *Ramirez*), his testimony confirms that Mr. Pruitt did not knowingly waive any guilt phase claims in state court.

Attorney Dautrich testified that, at the November 23, 2015 hearing, he and Mr. Pruitt had come to an agreement to "have the court address the DNA issues immediately," but "we did not intend to waive any issues in the PCRA motion except for penalty phase issues." NT Federal Hrg. at 58. Mr. Dautrich confirmed that the memorandum of law filed that same day, which reflected that Mr. Pruitt withdrew any penalty phase issues only, reflected the understanding he reached with Mr. Pruitt. *Id.* at 59.

Mr. Dautrich further testified that, after the November 23, 2015 hearing, his "understanding [was] that the issues stood exactly where they were as characterized and described by the memorandum that I filed November 23, 2015, in that all issues that were of a guilt phase nature were for consideration of the court, and Mr. Pruitt waived only the penalty issues." *Id.* at 62. When asked by the Court regarding the November 23, 2015 hearing, "Why didn't you want to make it clear that there was things being waived and things not being waived?," Attorney Dautrich stated that, "in hindsight, Judge, that may have been a better course of action." *Id.* at 73-74.

Attorney Dautrich testified that "maybe a month and a half after the hearing was held, I got a letter from Mr. Pruitt, and he had indicated that he finally received his mail, and he thought there were some problems with the way the transcript was typed up by the court reporter." *Id.* at 63. But Attorney Dautrich did not take any action until after Mr. Pruitt's PCRA had been denied. *See id*. at 64-66 (noting agreement that Attorney Dautrich's further action or lack thereof in state court were already part of the record from state court).

Attorney Dautrich's testimony only further confirms that Mr. Pruitt did not knowingly waive any guilt phase claims, and that Attorney Dautrich ineffectively failed to act to preserve Mr. Pruitt's claims after the November 23, 2015 hearing. The Court should set aside the procedural defaults of the guilt phase claims, adjudicate them on the merits, and grant relief.

## REQUEST FOR RELIEF

Wherefore, Mr. Pruitt respectfully requests that the Court:

1.  Set aside the procedural default of the defaulted claims and address them on the merits;

2.  Grant the petition for writ of habeas corpus, vacate Petitioner's convictions and sentences, and order a new trial;

3.  Order that the Commonwealth shall re-try Mr. Pruitt within 120 days of the Court's order or release him from custody.

Respectfully submitted,

/s/ Loren Stewart
Loren Stewart
Andrew Childers
Capital Habeas Corpus Unit
Federal Community Defender Office
  for the Eastern District of Pennsylvania
The Curtis, Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

Dated:  July 1, 2022
        Philadelphia, PA

**CERTIFICATE OF SERVICE**

I, Loren Stewart, hereby certify that on this date I filed the foregoing and the

concurrently-filed Reply Appendix through the Court's electronic filing system which provides

electronic service to the following person:

Kenneth W. Kelecic, Esq.
Berks County District Attorney's Office
633 Court Street
5th Fl. Svcs. Center
Reading, PA 19601


/s/ Loren Stewart
Loren Stewart


Dated:  July 1, 2022